STANDARD SURETY AND CASUALTY COMPANY OF NEW YORK, complainant,

*v.*

JOHN J. MURPHY, defendant-appellant; MICHAEL HANLEY, defendant-respondent; JOHN E. ANTHES, JR., and ELIZABETH-UNION-HILLSIDE-IRVINGTON LINE, INC., defendants.

[Argued October 24th, 1940.   Decided April 3d, 1941.]

*Mr. Fred Freiman* and *Mr. John A. Laird,* for the defendant-appellant.

*Mr. John W. McGeehan, Jr.,* for the defendant-respondent.

The opinion of the court was delivered by

DONGES, J.

The respondent, Michael Hanley, was employed by the Elizabeth-Union-Hillside-Irvington Line, Inc., as a bus driver. On July 7th, 1934, he suffered personal injuries as the result of a collision between his bus and a truck of P. Ballantine & Sons, and on May 4th, 1938, recovered a judgment for said cause of action against said P. Ballantine & Sons and Charles Farcher, Jr. The complainant herein, being insurer of said Ballantine corporation, paid Hanley the amount of such judgment, except the sum of $2,500, and filed its bill of interpleader with respect to said sum.

On final hearing, the claimants were reduced to two, namely Hanley, the injured employe, and the appellant, Murphy, who was assignee of the bus line of any interest it had in such fund.

*R. S. 34:15-40* provides that an employer who has paid workmen's compensation to an injured employe is entitled to reimbursement out of any judgment recovered by such employe against a third party tort feasor for such injuries. Murphy asserts that his assignor, the bus company, made such payments to Hanley and that, under the statute, it was entitled to recover the amount of such payments. The dispute arises as to whether the bus company or one Anthes made the compensation payments to Hanley.

It appears beyond dispute that in 1934, John E. Anthes, Jr., was the manager of the bus company; that Anthes and his wife and a brother, Louis Anthes, owned all of its capital stock; that the bus company had no bank account; that its receipts were deposited by Anthes in his personal account; that all claims against the bus company were paid by Anthes out of such bank account; that, shortly after the injury to

Hanley, Anthes paid him compensation at the rate of $20 per week, until the sum of $494 was paid. These payments were made prior to February 15th, 1935.

The Court of Chancery found that these payments were made by the general manager, Anthes, out of a fund composed partly of the company's money and partly of his own, but that the presumption is that the payments were out of company money and that the company's assignee, Murphy, was entitled to be reimbursed out of the fund in court to that extent. There is no appeal from so much of the decree as so orders.

The dispute arises over additional payments of compensation to Hanley, under the following circumstances: On February 15th, 1935, Anthes, his wife and brother, sold all of the stock of the bus company to Salvatore Italiano and Salvatore La Spada, for the sum of $35,000. Of this sum, $17,000 was payable in monthly installments of $500, beginning May 15th, 1933, to one Richard H. Cashion, as trustee, who was to apply the moneys to the satisfaction of certain obligations of the bus line, which the Anthes agreed should be paid out of the moneys so paid for their stock. Any balance was to be paid to Anthes. The Anthes had agreed to indemnify and save harmless the bus company and the purchasers of the stock, Italiano and La Spada, from all liabilities of the bus company existing at the date of the agreement of sale. This would, of course, include any liability of the bus company to Hanley.

Subsequent to the sale of the bus company stock to Italiano and La Spada, the Compensation Bureau made an award to Hanley in the amount of $2,000. Under Anthes' agreement, the bus company and the purchasers of the stock were to be indemnified against all claims against the company, and so Anthes instructed Cashion to pay to Hanley, out of the amounts paid monthly for the purchase of the Anthes stock, the sum of $20 per week in satisfaction of the compensation award. Starting August, 1935, these payments were made bi-weekly until the $2,000 was paid to Hanley.

It is asserted that the monthly payments of $500 to Cashion were made from funds of the bus company. However, the

moneys paid to Cashion were due from Italiano and La Spada on account of their agreement for the purchase of stock from Anthes and must be regarded as their money and not the money of the bus company. The purchasers of the stock were liable for the purchase price, not the bus company. The mere fact that the source of the money used in making the payments was the current receipts of the bus company from its operation of the buses, would not alter the situation. The funds were being used to discharge the obligation of the purchasers of the stock, and if they obtained the receipts of the bus line to use for this purpose, presumably they obtained them as dividends or compensation for services.

Anthes, seller of the stock, was under contract to pay all outstanding obligations of the bus company from moneys due him for the stock. When the payments were made, Anthes was no longer the manager of the bus company and had, according to the terms of the agreement of purchase and sale, dated February 15th, 1935, assigned the stock of the corporation to the purchasers, who agreed to assign it to Cashion "to hold in trust for the performance of this agreement."

It seems clear, as found by the Vice-Chancellor, that the money paid to Hanley after the agreement for sale of stock was the money of Anthes and not of the bus company. It is equally clear that Anthes was not the employer of Hanley, and that such payments to Hanley arose out of the agreement between Anthes and Italiano and La Spada to save and indemnify the bus company, the employer of Hanley, from such payment, and that neither the bus company nor its assignee, Murphy, is entitled to reimbursement of the $2,000.

It is argued that the rule applied to this case results in the unjust enrichment of Hanley and a double recovery for his injuries, contrary to the intent of the legislation. However, it has been held in *Erie Railroad Co.* v. *Michelson, 111 N. J. Eq. 541,* and *N. Y., S. & W. R. R. Co.* v. *Huebschmann, Ibid. 547,* that "the right of the employer to reimbursement is purely statutory." In those cases it was held that the employer was not entitled to reimbursement because the payments of compensation were made by its insurance carrier and

that the insurance carrier was not entitled to reimbursement because the statute at that time did not so provide. There was a later amendment to permit reimbursement to insurance carriers. The right being statutory, the requirements of the statute must be strictly met. In the present case, as in the *Huebschmann Case,* the employer did not make the payments and therefore is not entitled to recover that which it did not pay out.

The decree under review is affirmed.

*For affirmance*—BODINE, DONGES, PORTER, DEAR, WELLS, RAFFERTY, HAGUE, JJ. 7.

*For reversal*—THE CHIEF-JUSTICE, PARKER, CASE, HEHER, PERSKIE, WOLFSKEIL, JJ. 6.