66 N.J. Super. 124 (1961)
168 A.2d 660
MARGARET McCRAY, PLAINTIFF-RESPONDENT,
v.
LEONID CHRUCKY, DEFENDANT, AND JOHN J. CIAMPI, DEFENDANT-APPELLANT.
LEONID CHRUCKY, PLAINTIFF-RESPONDENT,
v.
JOHN J. CIAMPI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 6, 1961.
Decided March 2, 1961.
*126 Before Judges GOLDMANN, FOLEY and HALPERN.
Mr. Samuel O. Offen, attorney for appellant (Mr. Howard A. Goldberger, of counsel).
Mr. Pearce R. Franklin, attorney for respondent McCray.
Messrs. Oppenheim & Oppenheim, attorneys for respondent Leonid Chrucky (Mr. Henry H. Rubenson, of counsel).
The opinion of the court was delivered by FOLEY, J.A.D.
This appeal is taken by Ciampi from judgments entered against him on jury verdicts returned in the Law Division in favor of McCray and Chrucky.
The actions arose out of an automobile accident which occurred at the light-controlled intersection of High and West Kinney Streets in Newark, New Jersey, on December 20, 1957 at about 4:00 P.M.
Miss McCray was a passenger in a taxicab owned and operated by Ciampi. According to her, Ciampi had been proceeding south on High Street and, upon reaching West Kinney Street, brought his cab to a stop preparatory to making a left turn. The light was green for traffic going north and south. The driver "started up" and had gotten half way through his turn when the cab was struck by the Chrucky car, which was being driven northerly on High Street. This car, said Miss McCray, was almost a block away while Ciampi was still standing, and as he moved ahead was "coming pretty fast."
Ciampi's version of the happening was virtually the same. He added that he had come to a stop to permit several *127 northbound vehicles to pass, and then turned slowly with his directional signals flashing. He said that at this time the oncoming vehicle was still 150 to 200 feet distant, and he testified that he had completed the turn when the cab was struck.
Chrucky, obviously under a language handicap, testified that as he was passing through the intersection on a green light he suddenly stopped, having seen the taxicab "maybe half car" distant. The collision followed immediately.
Charles A. Peters, a bus driver, testified that he was proceeding easterly and brought his bus to a stop at the southwesterly corner of the intersection to pick up three passengers; the light then was green for eastbound traffic. While the bus was standing this light turned red, after which the taxicab proceeding east on West Kinney Street "shot" by the left side of the standing bus, entered the intersection on the red light, and collided with the northbound Chrucky car.
Dominic D. Franchino testified that while he was seated in a taxicab which was facing west at the northeasterly corner, awaiting the turn of the light from red to green for westbound traffic, he observed the Ciampi taxicab proceeding south on High Street stop at the intersection, prior to making a left turn. After three or four northbound cars passed, the Ciampi vehicle started to turn. He then saw Chrucky's car travelling northerly skid into the rear of the taxicab.
Holding Ciampi to be solely responsible for the accident, the jury returned a verdict of $17,000 against him on the McCray action, one of $1,500 in Chrucky's favor, and no cause of action on Ciampi's suit against Chrucky. The grounds of appeal urged by Ciampi are: (1) errors in the court's charge requiring reversal and error in refusing to charge certain requests of defendant; (2) the trial court erred in refusing to strike the testimony of Dr. Josephus C. Carr, Miss McCray's treating physician; (3) Miss McCray *128 failed to sustain the burden of proof of a causal relationship between the accident and her claimed injuries; (4) it was error to permit the jury to view a verified statement filed by McCray in a prior county district court action which, unknown to counsel, contained an ad damnum clause; (5) Chrucky was guilty of contributory negligence as a matter of law; (6) remarks made in summation by Chrucky's attorney were improper and prejudicial. We will treat with these grounds seriatim.

1.
The trial court charged the jury that in the event of recovery by plaintiff, McCray would be entitled to damages for any "aggravation, acceleration or exacerbation" of a pre-existing condition, disease or injury from which she may have been suffering. It is beyond dispute that since a party is entitled to recover damages for all of the adverse effects upon his well being which naturally flow from the negligence of another, such damages include those for the aggravation, acceleration or exacerbation of a pre-existing injury or disease. Appellant does not question this, but urges that in the particular circumstances of this case plaintiff was debarred from such recovery, because neither in the pleadings, interrogatory answers, or pretrial order, nor at the trial, did she posit her claim on aggravation, but, on the contrary, at all times took the position that her injuries and the effects thereof were the direct result of the accident upon which the action is based.
We are not dealing here with a situation where defendant claims surprise by reason of plaintiff's having imported to the trial proofs of an issue not previously defined by the pleadings or pretrial order, or one which defendant had no reason to believe would be relied upon. See Wadell v. Public Service Coordinated Transport, 3 N.J. Super. 132 (App. Div. 1949). Here the issue of aggravation was raised not by plaintiff but by defendant. He was quite within his rights *129 in taking the somewhat inconsistent position that the injuries were not the result of the 1957 accident, and that this accident merely caused an aggravation of the pre-existing injuries suffered in a 1955 accident, or alternatively that the so-called "injuries" were merely manifestations of a degenerative process, non-traumatic in origin. Had defendant been able to persuade the jury that no injuries whatever were suffered in the 1957 accident, or that plaintiff's physical abnormalities were unrelated to any traumatic injury, he would have been entitled to a verdict of no cause of action. But if, as may have been the case, the jury concluded that plaintiff did suffer injuries in the 1957 accident which aggravated a condition or conditions resulting either from earlier injuries or pre-existing disease, defendant was not entitled to be relieved of responsibility for such aggravating effects.
Nor are we presented with a case in which plaintiff, having framed her action upon the theory that her injuries were the direct result of the accident and offered proofs on that theory which were repugnant to the theory of aggravation of an existing infirmity, sought at the trial to shift grounds and thus avail herself of the latter approach. In such a case defendant, having relied upon an assumption that plaintiff's evidence would be limited to her averments, is entitled to have plaintiff's proofs confined to her allegations. See Jardine Estates v. Koppel, 24 N.J. 536 (1957).
When this case was presented to the jury the essential questions to be determined were: was defendant liable and, if so, what damages did plaintiff sustain. In its endeavor to answer these questions, the jury was obliged to examine all of the evidence and was free to accept what it felt to be credible, from whichever side it came and, having done so, to then fashion its verdict in accordance with the applicable law as defined by the judge. Appellant cites us no authority, and we know of none, which would permit a defendant to offer, in diminution of damages, proof that plaintiff's disability was not wholly due to the event with which defendant *130 was sought to be charged, but was in part attributable to a prior happening with which defendant was not chargeable, and upon this basis deprive plaintiff of recovery of damages for such part of the disability complex as was chargeable to defendant's negligence. We, therefore, find no error in the portions of the charge which are criticized, or in the refusal of the court to charge requests of defendant designed to implement the aforestated theory of nonliability.

2.
We find it unnecessary to discuss the testimony of Dr. Carr at length. Suffice it to say, that the reproduction of it occupies almost 60 pages of appendix, that the witness was subjected to searching cross-examination, and that in some respects his credibility was tellingly impugned thereby. After the doctor had been excused, defendant moved to strike his entire testimony from the record, essentially upon the ground that the reliability of the witness was belied by his notes, which he used in the course of his testimony to refresh his recollection. The motion was denied. Defendant concedes that this application was addressed to the discretion of the court but urges that the denial of it constituted an abuse of discretion. Again we are cited no authority in substantiation of defendant's contention. We know of no case which sustains the right of a trial judge to carve from the record the entire testimony of a medical witness simply because the court finds it to be incredible in certain particulars. Questions of credibility are peculiarly within the jury domain. While the court is granted wide latitude in the right to comment thereon, it is the function of the jury under the guidance of the court to sift the testimony and then to grant it such weight, if any, as in their judgment it deserves. We think the court would have been in error had it granted defendant's blanket motion, but even accepting defendant's argument that this lay within the discretionary power of the court, we find no abuse of discretion.

*131 3.
Defendant urges that plaintiff failed to sustain the burden of proof of causal connection between the accident and her claimed injuries, hence the verdict in her favor was contrary to the weight of the evidence. The brief of defendant epitomizes his argument on this branch of the case as follows:
"In evaluating this contention we reiterate that plaintiff's theory was that the accident was the sole cause of her injury and defendants, on the otherhand, asserted that plaintiff's condition was in no way attributable to the accident or in the alternative the accident merely aggravated a preexisting condition. A subsidiary proposition raised by the defendants was that plaintiff's condition resulted from the process of degeneration.
It is necessary that the proofs be reviewed in order to test defendants' contention and to highlight the fact that little, if any, credibility can be attached to the testimony of plaintiff and her witnesses."
Where it is urged on appeal that a verdict should be set aside as "against the weight of the evidence," the scope of our review is defined by R.R. 1:5-3(a):
"* * * A verdict of a jury shall be set aside as against the weight of the evidence if, having given due regard to the opportunity of the trial court and the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion." (Emphasis added)
It is not for us to determine whether the plaintiff has met the burden of proving causality between the accident and her injuries. This is the task of the trier of the facts  in this case the jury. Nor is it our function to weigh the testimony and the credibility of the witnesses, no matter how incredible counsel for defendant asserts their testimony to be. We conclude, that giving due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it does not clearly and convincingly appear *132 that the verdict was the result of mistake, partiality, prejudice or passion. There was sufficient testimony which, if believed by the jury, justified the verdict.

4.
In the course of the trial the attorney for Chrucky cross-examined plaintiff on a verified statement which was attached to her complaint filed in a county district court action. The complaint contained the usual ad damnum clause demanding as damages $3,000. Subsequently the verified statement with the complaint attached was received in evidence without objection. Defendant now asserts that the failure to object was due to "inadvertence" and asks that R.R. 1:5-3(c) the "plain error rule" be invoked. The error asserted is that reception of the exhibit offends the holding in Botta v. Brunner, 26 N.J. 82 (1958), in which the Supreme Court expressly overruled a long line of cases holding that it was not improper for counsel to advise the jury as to the amount of the ad damnum clause set forth in the complaint. This was done in order that the rule announced in Botta would be "invested with its full and intended scope * * *." The court went on to state, at page 104:
"Moreover, it is declared to be improper to send the complaint to the jury as a matter of course, since it contains the damages demanded. But our holding is not intended to interfere with use of the pleadings for other proper trial or evidentiary purposes." (Emphasis added)
The language chosen by the Supreme Court is quite precise and guarded. Its holding in this regard is carefully defined and advisedly limited. We find it to be inapplicable to the problem sub judice. Here the complaint, which is said to have been inadvertently exhibited to the jury, was not the complaint in the action under consideration. It was the complaint in the prior county district court suit subsequently discontinued upon the filing of the present action. *133 More important, however, is the fact that the complaint containing the ad damnum clause was not sent to the jury as a matter of course. It had been introduced in evidence and marked as an exhibit after counsel for Chrucky used the verified statement to cross-examine plaintiff. In other words, it was put in evidence for a legitimate trial purpose, hence not sent to the jury "as a matter of course."
We find no error in admitting the exhibit, but had there been, in our judgment it would not have given rise to the application of R.R. 1:5-3(c). We repeat here what has been said before. This rule is to be invoked sparingly and only to prevent a manifest denial of justice. A glib description, as an "inadvertence," of the failure of trial counsel to examine an exhibit when it is offered in evidence and to announce his objection to it at that time, is not appealing when considered in connection with R.R. 4:47 which eliminated the necessity for taking exceptions to rulings or orders of the court but preserved the requirement that the party make "known to the court the action which he desires the court to take or his objection to the action of the court and the grounds therefor * * *." In circumstances such as are here presented, if the court does invoke the plain error rule the nexus between the attorney's neglect and manifest injury to his client should be crystal clear. Having in mind that the jury in this case awarded Miss McCray $17,000 and that the ad damnum in the county district court suit sought only $3,000, we are unable to see any connection whatever between the exhibit and the verdict as rendered. Nor does defendant's brief suggest how and in what manner the defendant was prejudiced by the "inadvertence."

5.
Defendant's contention that Chrucky was guilty of contributory negligence as a matter of law is devoid of substance. The recital of the facts as set forth hereinabove demonstrates that the resolution of issues of negligence and *134 contributory negligence as between the respective drivers was plainly for jury determination. Only in the clearest case of contributory fault, where a contrary hypothesis is not fairly admissible, does the question become one of law for decisive action by the court. Battaglia v. Norton, 16 N.J. 171, 179 (1954). Such is not the case here.

6.
Finally, it is urged that the summation of the attorney for Chrucky was improper and prejudicial. This allegation is based on the following portion of his remarks:
"Now, Mr. Franchino, you will say, well, he was there but he didn't stop. He was riding on. He called the Brown and White taxicab and gave his name, and where is this taxicab driver who was driving Mr. Franchino? Where is he? He is not in court. Why? I don't know. It is not my responsibility to bring him in. But why didn't Mr. Ciampi bring him in and explain that that was the situation?"
It is said that these observations were made at a time when the trial judge was temporarily absent from the bench, and that defendant's attorney in his judgment did not think it wise to emphasize the point by objecting after the trial judge returned to the courtroom. For the purpose of disposing of this point, we will assume that the evidence did not supply a foundation for the comment on the defendant's failure to call the witness referred to thereby. As defendant argues, there was no testimony that defendant knew of the name or address of this witness, or that he was available for subpoena; but considering the entire factual spectrum there is no reason to believe that the remarks were of determinative significance. Be that as it may, an attorney is not permitted to allow objectionable remarks or conduct to pass unnoticed for tactical reasons, and subsequently claim injury therefrom. If the attorney finds what his adversary says in summation to be objectionable, he should immediately voice his objection to the *135 court, and if the remarks have been of such a nature that it is improbable that the court's instructions to the jury to disregard them will rectify the damage, then a motion for mistrial is in order. If, as defendant indicates, the judge was not present, his attorney could have interrupted his adversary pending a ruling on his objection; or he could have brought the matter to the attention of the judge when he resumed the bench, at side bar and out of the hearing of the jury; or he could have verbally or in writing requested the court to incorporate suitable instructions in the body of the court's charge. He chose to stand mute and he will not now be heard to complain.
Affirmed.