72 N.J. Super. 100 (1962)
178 A.2d 64
HAROLD DALTON, PLAINTIFF-APPELLANT,
v.
SARAH GESSER AND ANTHONY CARPENTER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1961.
Decided January 26, 1962.
*103 Before Judges CONFORD, FREUND and LABRECQUE.
Mr. Francis Sorin argued the cause for the plaintiff-appellant.
Mr. Edward DeSevo argued the cause for respondent Sarah Gesser (Messrs. DeSevo & Cerutti, attorneys; Mr. Edward DeSevo, of counsel).
Mr. John E. Keale argued the cause for respondent Anthony Carpenter (Messrs. Beggans & Keale, attorneys; Mr. John E. Keale, of counsel; Mr. Robert E. Tarleton, on the brief).
The opinion of the court was delivered by LABRECQUE, J.S.C. (temporarily assigned).
Plaintiff appeals from a jury verdict of no cause for action and from the subsequent denial of his motion for a new trial.
The complaint sounded in negligence, the facts being substantially as follows: On April 13, 1959 at about 3:15 A.M., plaintiff was riding as a passenger in an automobile being driven by defendant Carpenter on Bergenline Avenue, Union City. At the intersection of 41st Street the car was involved in a collision with that of the codefendant Gesser. Plaintiff gave the following testimony as to the injuries he sustained as a result of the accident. He was rendered dizzy and temporarily unconscious, and received emergency treatment in the North Hudson Hospital. Sent home thereafter, he continued to suffer from pain and headaches. At the end of some three or four weeks without substantial improvement he consulted Dr. Leo Levitov, who inaugurated a series of treatments which lasted until March 31, 1960. However, he continued to suffer from headaches on the left side of his head, the forehead and the back of his head, *104 from which he had never previously suffered. He also suffered from hour-long buzzings in the left ear. He had a history of previous injuries in the region of the back, the left hand, the right knee and the chest, and had undergone a head operation in 1957 for a right subdural hematoma. At about the time of the operation he had suffered what was described as a "stroke," with a resultant paralysis to his left side for a time. Prior to his hospital confinement he had had headaches only in his temples and suffered from short periods of buzzing in his ear. After his hospitalization he had no headaches and was in fairly good condition although somewhat weak.
Dr. Levitov started to treat the plaintiff on May 11, 1959. He found "a cerebral concussion which was superimposed on a previous injury to the brain," healing contusions of the left ear, pain in the left neck, shakiness, and pain in the left temple. His diagnosis included, in addition to the cerebral concussion, a sprain of the neck, and contusions and lacerations of the ear. On April 28, 1961, upon re-examination of the plaintiff, he found him still complaining of headaches of the frontal variety radiating around the left parietal region, weakness of the leg and shakiness of the body. In response to a hypothetical question which included plaintiff's previous injuries and hospital confinements, he opined that there was causal relation between the accident and the cerebral concussion from which he found the plaintiff suffering. He concluded that the condition was permanent.
Various trial errors and errors in the charge are asserted as grounds for reversal. Plaintiff also argues that the verdict of no cause for action was contrary to the weight of the evidence and that his motion for a new trial should have been granted.
It is first urged that the trial judge erroneously permitted the attorney for the defendant Gesser to advise the jury that he was appearing for the Unsatisfied Claim and Judgment Fund. At the trial of the case defendant Gesser did *105 not appear, the court being advised that her whereabouts were unknown. Thereupon the following transpired out of the presence of the jury:
"The Court: In the light of what the court said to the jury the record should show that it is proposed that because the defendant Sarah Gesser, although an answer has been filed in her behalf, will not appear and that her present whereabouts is unknown. In the absence of insurance protection of that defendant, Mr. DeSevo appears for the Fund.
Mr. DeSevo: Does your Honor want the complete technical name known as the Unsatisfied Claim and Judgment Fund of the State of New Jersey?
The Court: In view of that situation, Mr. DeSevo asks leave in his opening to refer to the probability that the defendant Sarah Gesser will not appear and that his interest in appearing is in behalf of said Fund.
* * * the court feels that it should be granted, limited to the manner stated and not for further reference in the examination of witnesses or in the summation at the end of the case."
When the plaintiff objected, the following colloquy took place:
"Mr. Sorin: May I state as the reason for my objection that by permitting the attorney for Mrs. Gesser or the Fund to state that the Fund is the principal in this matter creates the same sort of prejudice that a reference either to insurance or lack of insurance might well instill in the minds of the jury and I feel that my objection goes to the prejudice arising out of what I feel is a collateral matter and not relevant to the trial of the case. I have indicated I would bind myself because I think it would be fair to not comment upon the absence of the defendant so that it would not emphasize the absence to the jury.
The Court: The difficulty with that, Mr. Sorin, is that the absence of the defendant would be obvious and there must be some limited explanation rather than be left to the bewilderment of the jury the activity in her behalf.
The court feels that your objection, as stated within the exercise of my discretion to control the trial of this case with justice to all parties, is not substantial but it may be noted."
Following this, the jury was advised by the attorney for the defendant Gesser, in his opening to the jury, that he was appearing for the Unsatisfied Claim and Judgment Fund of the State of New Jersey.
*106 It is urged by defendant that the statement in question was necessary to protect the Fund against fraud and abuse, citing Myers v. Cave, 55 N.J. Super. 185 (App. Div. 1959). The case cited is not apposite. Neither the reason now urged by the defendant nor the reason relied upon by the court, i.e., that it would relieve the jury's "bewilderment," justified the furnishing of this prejudicial piece of information to the jury. The issue was one of negligence, the remedy being the award of money damages in the event the defendant was found responsible. It made no difference as to the defendant's liability whether she was insured, whether the Fund was obligated to pay the judgment, or whether she would have been required to pay the judgment herself. By permitting counsel for the defendant Gesser to advise the jury that he appeared for the Unsatisfied Claim and Judgment Fund, the jury was indirectly being advised that (1) Gesser was not insured, and (2) any verdict rendered against Gesser would be paid out of a public fund.
Whether done directly or indirectly, it would have been improper to advise the jury that the defendant was insured. Sutton v. Bell, 79 N.J.L. 507 (E. & A. 1910); Patterson v. Surpless, 107 N.J.L. 305 (E. & A. 1930); Hansson v. Catalytic Construction Co., 43 N.J. Super. 23, 29 (App. Div. 1956). It would have been likewise improper to permit counsel for the defendant by his remarks to indicate to the jury the absence of insurance. Haid v. Loderstedt, 45 N.J. Super. 547 (App. Div. 1957).
To permit the defendant to accomplish the same result in the manner here indicated constituted prejudicial error, especially in the context of the case here presented, where there were no precautionary instructions in the charge.
The Unsatisfied Claim and Judgment Fund Act, N.J.S.A. 39:6-61 et seq., was not enacted to establish liability insurance for uninsured drivers. Lindsay v. Boles, 61 N.J. Super. 516 (Cty. Ct. 1960). The obligation of the Fund to pay does not become absolute until the rendition *107 of a judgment and the entry of an order certifying compliance by the plaintiff with the statutory requirements and authorizing payment. The statute puts the Fund in the shoes of the defendant and makes it subject to whatever weaknesses may be inherent in the defendant's position, including the risk that the defendant may not appear at the trial. To permit counsel retained by the Fund to advise the jury in the manner here complained of, serves to introduce irrelevant considerations into the decision of the matter, and this regardless of the familiarity of the jury with the operation of the Fund. The jury is charged with the task of deciding on the merits the factual issues committed to it. Anything tending to detract from the proper performance of this obligation is to be avoided.
It is next charged that the trial court improperly limited the scope of plaintiff's medical proofs. As noted above, plaintiff had a prior medical history involving a head operation and injuries to the left hand, back, right knee and the chest. His prior hospital confinements included stays in Jersey City Medical Center and St. Mary's Hospital. In the former, he had been operated on for a right subdural hemorrhage. He subsequently had a relapse which resulted in his confinement in the latter hospital for an additional period. He testified, in substance, that the only time he had suffered from headaches prior to the accident was previous to his 1957 operation in the Medical Center.
It is not altogether clear whether Dr. Levitov's testimony that plaintiff had a cerebral concussion "superimposed upon" a previous brain injury indicated an opinion that the concussion either aggravated a previous condition or concurred with such previous condition to produce the plaintiff's present symptoms. Apparently, however, the trial court and the parties were under the impression that such was the opinion of the witness.
At the conclusion of the plaintiff's case, a motion was made on behalf of the defendant Gesser, which was joined in by the codefendant, to strike the testimony of Dr. Levitov *108 upon the ground that "it now appears that at the time he made his diagnosis he was not, did not have the benefit of the hospital record or history of this patient and he has conceded on the question of elimination of causes that the sequelae of the operation itself could cause the headaches, and he also has conceded that all of the other conditions which I gave to him could all be the cause of this man's alleged headaches, and that the only basis upon which he came to the conclusion of a concussion was that at the time he saw the man in 1960 and based solely on complaints of headaches by this claimant."
The trial judge granted the motion to "strike any part of the doctor's testimony which relates to any causal relation of an aggravation of any brain condition on the ground that there is no competent showing upon which the foundation is sufficiently laid to express that opinion." He further ruled:
"* * * however, on the ground of the doctor's opinion as to causal relationship of headaches to this occurrence, I think I deny the motion, but that will be restricted to headaches and not to any brain condition or aggravation of any condition which would cause the headaches.
That is my ruling."
An exception was duly taken. In the charge, therefore, the jury was instructed:
"Now, as to that measure of recovery for injuries, I should say to the jury that in the course of the trial I have struck from the record any claim of any cause of [sic] aggravation of any brain injury. I have felt that that has not been competently shown to be admissible to the jury, so the jury will not consider, and exclude any consideration of any claim of the cause or aggravation of any brain condition."
In thus striking out the doctor's testimony and restricting the jury to the consideration of the claim of headaches, without consideration of the evidence as to the cause of the headaches or the brain condition which brought it about, the court fell into reversible error. The doctor's *109 qualifications were not in question. He had had the plaintiff under observation and treatment for a period of over nine months beginning four weeks after the accident.
He testified that as the result of the accident one of the injuries plaintiff had suffered was a cerebral concussion. On cross-examination he admitted that he had made his diagnosis without having seen the actual hospital records of plaintiff's previous confinements, but he had received a history of them and of plaintiff's prior condition from the plaintiff himself during the course of treatment. Moreover, he was shown and he examined the hospital records during a court recess before testifying in response to the hypothetical question.
Plaintiff's own testimony indicated that prior to the happening of the present accident he had made a substantial recovery from the conditions which led to his prior hospitalizations. In the accident he hit something and everything "went black in front of him," and he had a feeling "of going around and around in darkness." His next feeling was standing on the sidewalk in a dizzy condition holding his left ear which was bleeding. He did not remember suffering from headaches after his operation in the Jersey City Medical Center in 1957. He averred that at the time of the accident he was physically capable and mentally able to accomplish his usual work and had no complaints referable to his head. After the accident he started to get pain alongside of his head, and wound up with headaches.
It was for the jury to determine whether the headaches complained of were caused by a cerebral concussion sustained in the accident, whether they were due to the aftermath of some prior injury or illness, or whether they were contributed to by both (see infra). The doctor relied upon plaintiff's statement, reiterated at the trial, that he had ceased to suffer from headaches after his head operation in November 1957. The last medical record of any complaints as to headaches prior to the accident was in January 1958. The fact that it was possible for one or *110 more of the prior conditions referred to in the cross-examination to bring about headaches as conceded by the doctor, was relevant as bearing upon the weight to be accorded the doctor's testimony, but did not justify its being stricken. This is especially so where, as here, there was no medical opinion to the contrary produced by the defendant. The hypothetical question assumed the facts contained in the previous hospital records. The court indicated as its reason for striking the testimony that Dr. Levitov had not studied the full record but had viewed it casually. But it is not within the province of the trial judge to thus determine, on his own initiative, that the inferential chain drawn by a qualified witness in response to a proper hypothetical question contains a medically dubious link, or to interject his personal evaluation of the persuasiveness of the expert's reasoning as a barrier to its consideration by the jury. Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 86 (App. Div. 1961).
It is likewise urged by the plaintiff that the same erroneous ruling was carried over into the court's charge and was further aggravated by an erroneous instruction as to the test to be applied in passing upon the relation between plaintiff's prior physical condition and the headaches from which he was suffering. In connection with this the court charged:
"Now, you recall there was testimony in this case concerning a prior physical condition involving the plaintiff of which it is said there was a lack of causal relationship between the present accident and the resulting claims of headaches by the plaintiff, in that the present headaches might be either wholly or partially the result of the prior condition and not solely from the defendants' negligence.
In that respect I charge you you should consider if there is a logical relationship between the prior condition involving the plaintiff as affecting what was the proximate result of this accident. The test to be given this type of evidence is the possibility rather than the probability that the prior condition of health involving the plaintiff could have caused the headaches now claimed by the plaintiff as a result of this accident or could be attributed to the earlier physical condition.
*111 The question for you to decide is whether there is a connection between the prior physical condition which involved the plaintiff and the headaches here claimed. If you find there was a connection between the headaches and the prior physical condition as aforementioned, the headaches should be excluded from your deliberations.
On the other hand, if you find no such connection between the headaches and the prior physical condition you should include the claim therefor in your deliberations as you believe it to be the proximate result of this accident." (Emphasis added)
Adequate objections were made to this portion, whereupon it was substantially repeated in an addendum to the charge.
Primarily, it should be noted that if an accident for which a suit was brought, operating on the body of a plaintiff having a previous condition of illness or injury, produces a causally resultant condition worse than it would have been if the plaintiff had been in perfect health before the accident, the plaintiff may nevertheless recover for his total existing condition consequent upon the accident in question. Hahn v. Delaware, L. & W.R.R. Co., 92 N.J.L. 277, 279 (Sup. Ct. 1918), affirmed 93 N.J.L. 463 (E. & A. 1919); McCray v. Chrucky, 66 N.J. Super. 124, 128 (App. Div. 1961); Restatement, Torts, sec. 461 (1934).
The cited excerpt, while not very clearly framed, when considered in the light most favorable to the defendant, appears to inform the jury that if they find a possibility (rather than a probability) that the plaintiff's prior condition of health could have caused the presently existing symptoms, the plaintiff may not recover on his claim that they are due to the accident in suit; likewise, if there was "a connection" between the headaches and the prior condition. This was obviously error. In order for the jury to find for the plaintiff as to his contention that his headaches were causally related to the accident in question, it was only required to find that he had sustained the burden of establishing that issue by the preponderance of the proofs  in other words, that the balance of probabilities in favor of the hypothesis claimed by him preponderated over other possible hypotheses. Botta v. Brunner, 26 N.J. 82, 90 (1958); *112 Hercules Powder Co. v. Nieratko, 113 N.J.L. 195 (Sup. Ct. 1934), affirmed 114 N.J.L. 254 (E. & A. 1935); Atamanik v. Real Estate Management, Inc., 21 N.J. Super. 357 (App. Div. 1952). If the jury had found such preponderance to exist, it was required to decide the issue in his favor. A connection between the prior injuries and the headaches, if established by the defendant, did not necessarily preclude such a finding. A tortfeasor is liable for all the natural and proximate consequences of his unlawful act. The principles of proximate cause are not confined to the question of the existence of liability but are equally applicable to the determination of the extent thereof. Restatement, Torts, sec. 454 (1934). As stated in comment (b) under the above cited section:
"The same rules which determine whether the actor's conduct is, or is not, a legal cause of another's harm are applicable irrespective of whether the relation of legal cause and effect is necessary to establish liability or to establish the amount of damages to be paid where liability is admitted or proved. In the one case as in the other, the actor's negligent conduct must be a substantial factor in bringing about the other's harm, and there must be no rule of law which relieves the actor from liability because of the manner in which the harm was brought about."
In Menarde v. Philadelphia Transp. Co., 376 Pa. 497, 103 A.2d 681 (Sup. Ct. 1954), where the defendant tortfeasor was held responsible for a breast cancer which made its appearance some two months after the accident, the court sustained a charge to the jury to the effect that:
"* * * A wrongful act may be the legal cause of damage though other causes may have joined in producing the final result. It is sufficient if you find that defendant's conduct, or negligence, was a substantial factor in bringing about the injury complained of. That is, if you determine that defendant's negligence was either the sole cause or a substantial contributing cause of the injury, plaintiff is entitled to recover."
We think this language reflects the law of New Jersey as to the extent of liability for the physiological effects of a *113 tortious injury, see Hahn v. D.L. & W.R.R. Co., supra; McCray v. Chrucky, supra, as well as our law as to liability for the accident itself in relation to the concurrence of other factors contributing thereto, as enunciated in such cases as Hartman v. City of Brigantine, 42 N.J. Super. 247, 261 (App. Div. 1956, affirmed 23 N.J. 530 (1957), and Melone v. Jersey Central Power & Light Co., 30 N.J. Super. 95, 105 (App. Div. 1954), affirmed 18 N.J. 163 (1955).
In thus charging the jury the trial judge assertedly relied upon the opinion of the Supreme Court in Paxton v. Misiuk, 34 N.J. 453 (1961). In that case, in discussing the admissibility of evidence of prior accidents designed to show that the plaintiff's claimed disability was caused by an earlier accident or a pre-existing condition resulting therefrom, the court stated at one point that the plaintiff might be cross-examined as to the possibility rather than the probability of a causal connection between prior accidents and the present condition. (34 N.J., at pp. 460, 461.) The court there was clearly discussing only the admissibility of evidence and not the burden or quantum of proof to be met by the plaintiff. We do not read the opinion as saying that the measure of evidence, on behalf of a defendant, sufficient to justify a jury in deciding against the plaintiff, on his burden of proof of establishing causal connection between his existing condition and the accident in suit, would be the mere possibility of a relationship between the condition complained of and the earlier accident. On the contrary, as we have stated, the fundamental rule as to the amount of proof required to be produced by the plaintiff on the disputed issue is based upon the test of probability from the preponderance of the proofs, rather than that of possibility which was applied here. While evidence of other possible causes was admissible, the plaintiff was required only to establish that the balance of probabilities preponderated in favor of the hypothesis that the headaches in question were the result of the accident for which suit was brought, or that the accident was a substantial *114 factor in producing the symptoms as against any contribution thereto by previous conditions or injuries.
In the interest of comprehensiveness of the discussion, it is necessary to distinguish a factual situation wherein there is no question presented involving the possibility of concurring causes for a given set of symptoms or degree of disability, but merely a dispute as to whether a prior condition or accident, alone, or the accident presently involved, alone, produced the disputed disabilities or symptoms. It was this type of situation which was involved in Paxton v. Misiuk, supra (34 N.J., at p. 460). This is the context, moreover, in which some of our cases have pointed to plaintiff's obligation, where only circumstantial evidence supports the hypothesis that defendant's tortious act has produced the disability or symptoms, to exclude the idea that the result was due to a cause with which defendant was unconnected. See Migliaccio v. Public Service Ry. Co., 101 N.J.L. 496, 501 (Sup. Ct. 1925). Still further differentiation must be made of cases where the question is whether a prior accident or condition has produced a condition or disability separable from that causally resulting from the tortious act involved in the current suit, in which event defendant may properly seek limitation of his liability to that part of plaintiff's disability caused by his own negligence and ask to be relieved of liability for the residual effects of a prior injury or condition. Prosser, Torts (2d ed. 1955), sec. 45, p. 224; 2 Harper & James, Torts, sec. 20.3, pp. 1127, 1128 (1956). It is in regard to a situation of this type that the court said in Paxton v. Misiuk, supra (34 N.J., at p. 460), that:
"A plaintiff may be cross-examined as to prior injuries to show that his present physical condition did not result solely from defendant's negligent act, but was caused, wholly or partially, by an earlier accident or pre-existing condition."
This is evident from the court's citation of the annotation in 69 A.L.R.2d 593, 597, 598 (1960). See also page 596, second column, of the same annotation. Clearly, the principle *115 referred to must not be confused with a defendant's liability for the entirety of an inseparable specific disability, like the plaintiff's headaches in the present case, which, within the proofs and formulation of the issues below, must be deemed to have been due in entirety either to the prior condition alone (in which event plaintiff may not recover), to the current accident alone, or to the concurrent effect of both the prior condition and the current accident (in either of which cases the plaintiff may recover).
The effect of the portion of the charge above quoted was to permit the jury to decide against the plaintiff merely on a showing of the possibility that his prior condition of health could have caused or contributed to the headaches from which he suffered. Since the jury had already been restricted to consideration of the plaintiff's headaches without reference to a brain condition or aggravation of a brain condition as bringing them about, there was left little in the way of additional injuries on which to base a verdict in the event the jury found a possibility that the prior condition was connected with the headaches. In arriving at its verdict of no cause for action, the jury apparently determined that no compensable injury had been established related to the defendants' negligence under the rule expounded to it by the trial court, rather than that there was no actionable conduct by the defendants. Watkins v. Myers, 12 N.J. 71 (1953); Murphy v. Terzako, 14 N.J. Super. 254 (App. Div. 1951); Kovacs v. Everett, 37 N.J. Super. 133 (App. Div. 1955). Such was the conclusion of the trial court in passing upon the motion for a new trial.
In the light of the charge the above conclusions are clearly manifest from the evidence as to liability which was before the jury. The probability that plaintiff, a passenger, would recover against one or both of the defendants was undoubtedly evident to the parties. He was exercising no control over the vehicle in which he was riding. There were no unusual weather or traffic conditions confronting the drivers of the respective vehicles. Defendant Carpenter *116 testified that when he was five feet away from the corner of 41st Street, he took his foot off the gas and, although he made observations, he saw nothing approaching from 41st Street. When he was half to three-quarters of the way across the intersection, he was hit in the side by the front of the vehicle of the defendant Gesser which he had not seen at all before the collision. He was unable to state whether Gesser had lights or not, but the intersection was well lighted. Bergenline Avenue, on which he had been proceeding, was straight and intersected 41st Street at right angles. The two cars in question constituted the only moving traffic at or near the intersection, and nothing was testified to which would have diverted the attention of the drivers from one another.
The trial court had charged the jury that each of the drivers involved owed to the plaintiff the duty of exercising reasonable care for his safety. Cf., Cohen v. Kaminetsky, 36 N.J. 276 (1961). The defenses of contributory negligence and assumption of risk were withheld from the jury's consideration. It is thus difficult to conceive by what other theory the jury chose to absolve both drivers from liability. The errors complained of thus tainted the entire verdict.
Since the case must be retried, we turn to consideration of the trial court's refusal to allow the mortality tables into evidence, and its refusal to permit the plaintiff to offer rebuttal testimony as to prior medical examinations by defendants' physicians, or to reopen his case for that purpose.
Towards the end of plaintiff's case, the tables of life expectancy contained in the rules were offered in evidence. R.R. 4:45A. There was an objection which was sustained on the ground that "a proper foundation has not been laid to support the evidence or admissibility of the evidence of the tables." The admissibility of the tables depended upon their materiality and relevancy to a prima facie established element of compensatory damages. There was evidence from which the jury could have concluded that *117 plaintiff's headaches were of a permanent nature. The tables were thus material and relevant as to the probable duration of the claimed disability and should have been admitted with cautionary instructions concerning their inconclusive import and limited significance. Kappovich v. LeWinter, 43 N.J. Super. 528, 532 (App. Div. 1957); Dickerson v. Mutual Grocery Co., 100 N.J.L. 118 (E. & A. 1924).
The defendants rested without producing any medical proofs. Thereupon the plaintiff offered to prove, by way of rebuttal or by reopening his case, that he had been examined by an orthopedist and a neurologist on behalf of the defendant Carpenter. The purpose of the offer was undoubtedly to establish the inference that, if called, these physicians would have given testimony unfavorable to the defendant. Andryishyn v. Ballinger, 61 N.J. Super. 386 (App. Div. 1960). The plaintiff urges that he had no means of knowing that they would not be called, and hence had not offered proof of the examination as part of his main case. While we are impressed with the argument advanced, the ruling was a discretionary one and we are unable to conclude that the court committed an abuse of discretion.
Reversed and remanded for a new trial.