106 N.J. Super. 405 (1969)
256 A.2d 63
JAMES A. BELLO, PETITIONER-RESPONDENT,
v.
COMMISSIONER OF THE DEPARTMENT OF LABOR AND INDUSTRY, AS TRUSTEE OF THE TWO PER CENT FUND, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1969.
Decided July 22, 1969.
*408 Before Judges GAULKIN, COLLESTER and LABRECQUE.
Mr. Stephen Skillman, Deputy Attorney General, argued the cause for appellant (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
Mr. Seymour B. Jacobs argued the cause for respondent (Messrs. Balk, Jacobs, Goldberger & Mandell, attorneys).
The opinion of the court was delivered by LABRECQUE, J.A.D.
The Commissioner of the Department of Labor and Industry (Commissioner), as trustee of the Two Per Cent Fund, also known as the Second Injury Fund (Fund), appeals from a judgment of the Essex County Court denying the Fund credit, in its computation of the benefits due petitioner James A. Bello, for monies received in settlement of his third-party claim.
In July 1959 Bello filed a petition in the Division of Workmen's Compensation against his employer, Goodyear Tire and Rubber Company, claiming compensation benefits for *409 disability sustained by reason of his having contracted an occupational disease and developed systemic poisoning due to the inhalation and ingestion of harmful dusts and gases. On October 24, 1961 a stipulation was entered providing for payment by Goodyear of a sum equal to 25% of partial permanent disability, or 137 1/2 weeks at $35 per week, totalling $4,812.50 for petitioner's work connected injuries.
Thereafter petitioner obtained a third-party recovery (by way of a settlement) against Public Service Coordinated Transport in the sum of $30,000. Following this the petition in the Division of Workmen's Compensation was amended to include a claim for benefits under the One Per Cent (now Two Per Cent) Fund. N.J.S.A. 34:15-95.1. The judge of compensation found that petitioner had suffered a toxic encephalopathy as the result of inhaling harmful fumes and gases while on the job, by reason of which he was permanently disabled to the extent of 75% total. The permanent disability was found to be neurological and neuropsychiatric in nature. He further found that petitioner, prior to his employment with respondent, had been disabled to the extent of 25% of total permanent by reason of a number of noncompensable preexisting pathological conditions, including a respiratory condition in the nature of a chronic bronchitis and cardiovascular disability in the nature of arteriosclerotic heart disease with coronary insufficiency. Petitioner was found to be totally and permanently disabled as a result of the combination of the two and was awarded $13,500 for his 75% work connected disability, on account of which his employer was held to be entitled to a credit on the basis of petitioner's third-party recovery.
On the issue of whether the Fund was also entitled to credit out of the third-party recovery, the judge of compensation, in an advisory report to the Commissioner, held that it was and recommended that the benefits allowed Bello from the fund be restricted to $13.33 per week until such time as the balance of the third-party award was expended, and thereafter be increased to the full rate of $40 per week. *410 When, despite Bello's exceptions, these recommendations were adopted by the Commissioner, petitioner appealed to the County Court where the Commissioner's action was reversed. The present appeal followed.
The issue is one of novel impression. Decisions of our sister states are at variance. See Cole v. Morris, 409 S.W.2d 668 (Mo. Sup. Ct. 1966) (holding Missouri's Second Injury Fund entitled to be subrogated to the workman's right to recover in the third-party action). Compare Orth v. Shiely Petter Crushed Stone Company, 253 Minn. 142, 91 N.W.2d 463 (Sup. Ct. 1958) (denying subrogation to special compensation fund in the absence of specific statutory authorization).
N.J.S.A. 34:15-40 preserves the right of an employee to sue a third-party tortfeasor, notwithstanding that the injuries for which he seeks recovery are also compensable. It provides, however, that:
"(a) The obligation of the employer or his insurance carrier under this statute to make compensation payments shall continue under the payment, if any, by such third person or his insurance carrier is made.
(b) If the sum recovered by the employee or his dependents from the third person or his insurance carrier is equivalent to or greater than the liability of the employer or his insurance carrier under this statute, the employer or his insurance carrier shall be released from such liability and shall be entitled to be reimbursed, as hereinafter provided, for the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents less employee's expenses of suit and attorney's fee as hereinafter defined.
(c) If the sum recovered by the employee or his dependents as aforesaid is less than the liability of the employer or his insurance carrier under this statute, the employer or his insurance carrier shall be liable for the difference, plus the employee's expenses of suit and attorney's fee as hereinafter defined, and shall be entitled to be reimbursed, as hereinafter provided for so much of the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents as exceeds the amount of such difference plus such employee's expenses of suit and attorney's fee."
In the event that the employee fails to bring a third-party action within one year of the accident, his employer or its *411 insurance carrier may do so under certain conditions. L. 1931, c. 279, now N.J.S.A. 34:15-40 (f).
Benefits under the One Per Cent Fund were first made available by L. 1923, c. 81. At the time of the occurrence of Bello's work-connected disability the statute as amended, N.J.S.A. 34:15-95, provided for payment of benefits out of the Fund to "persons totally disabled, as a result of experiencing a subsequent permanent injury under conditions entitling such persons to compensation therefor, when such persons had previously been permanently and partially disabled from some other cause-; * * *." It provided, however, that no person would be eligible for benefits:
"(a) If the disability resulting from the injury caused by his last compensable accident in itself and irrespective of any previous condition or disability constitutes total and permanent disability within the meaning of this Title.
(b) If permanent total disability results from the aggravation, activation or acceleration, by the last compensable injury, of a pre-existing noncompensable disease or condition.
(c) If the disease or condition existing prior to the last compensable accident is not aggravated or accelerated but is in itself progressive and by reason of such progression subsequent to the last compensable accident renders him totally disabled within the meaning of this Title.
(d) If a person who is rendered permanently partially disabled by the last compensable injury subsequently becomes permanently totally disabled by reason of progressive physical deterioration or pre-existing condition or disease."
It further provided that nothing in the foregoing provisions was to be construed to deny benefits to any person who had been previously disabled by reason of total loss of, or total and permanent loss of use of, a hand or arm or foot or leg or eye, when the total disability was due to the total loss of, or total and permanent loss of use of, two or more of said major members of the body, or to any person who in successive accidents had suffered compensable injuries, each of which, severally, caused permanent partial disability, but which in conjunction resulted in permanent total disability.
*412 In holding that the Fund was not entitled to credit on account of Bello's third-party recovery, the judge of the County Court adopted a strict construction of N.J.S.A. 34:15-40. See Standard Surety & Casualty Co. v. Murphy, 129 N.J. Eq. 284, 288 (E. & A. 1941). Appellant urges that this was error and that the statute is to be liberally construed to further the purposes of its enactment. Henry Steers, Inc. v. Turner, &c., Co., 104 N.J.L. 189, 195 (E. & A. 1927). We are satisfied that whatever may be the "rule" of construction, it is subordinate to the goal of effectuating the legislative plan, as it may be gathered from the enactment when read in the full light of its history, purpose and context. State v. Gill, 47 N.J. 441, 444 (1966). It is not the words of the law but the internal sense of it that makes the law. Caputo v. Best Foods, Inc., 17 N.J. 259, 264 (1955). The motive which led to its enactment is one of the most certain means of establishing the true meaning of the words used. Ibid.
Here the legislative purpose appears quite clear. Prior to the enactment of the statute permitting reimbursement, an employee sustaining a work-connected disability by reason of a third party's negligence could recover and retain both workmen's compensation benefits from his employer and damages from the culpable third party. Newark Paving Co. v. Klotz, 85 N.J.L. 432 (Sup. Ct. 1914), affirmed o.b. 86 N.J.L. 690 (E. & A. 1914). In Newark Paving Co. it was held (at p. 434) that the right to compensation and the right to recover against a tortfeasor were of so different a character that the employer had no right of subrogation to the employee's claim against the tortfeasor. The statute was intended to correct this or, as was said in New Amsterdam Casualty Co. v. Popovich, 18 N.J. 218, 226 (1955), "to meet a mischief where an injured employee could retain both the compensation payments and full damages from his common law right of action against a third party." By it the Legislature intended to set up a comprehensive plan for regulating the rights and responsibilities of the parties, *413 preserving the right of the employee to maintain his common law action against third parties (where the damages recoverable could well exceed the compensation benefits payable) and, at the same time, to provide for reimbursement to the employer or its insurance carrier out of any recovery from the one whose negligence was responsible for the injury. United States Casualty Co. v. Hercules Powder Co., 4 N.J. 157, 165 (1950). In this way the party at fault was required to satisfy its common law obligation to the injured person, the employer was reimbursed for the payments by way of compensation made by him, and the employee was permitted to retain any excess based upon the greater damages recoverable in a common law action.
We are convinced that it was the legislative intention, in enacting N.J.S.A. 34:15-40, that payments by way of benefits under the Workmen's Compensation Act be subject to credit or reimbursement in the event of a recovery by the employee against a third-party tortfeasor. We are likewise convinced that the omission of any express provision for credit or reimbursement in favor of the Fund would not preclude such action, provided plaintiff could recover in the third-party suit for the disability for which the Fund was found liable to payment.
Prior to the enactment of N.J.S.A. 34:15-95 New Jersey adhered to the sole responsibility rule whereby an employer was held liable for payment for all disability flowing from an employee's work-connected accident, even though the disability would not have been nearly so great had the workman been whole and well, or had he not been previously handicapped by some physical impairment. Belth v. Anthony Ferrante & Son, Inc., 47 N.J. 38, 45-47 (1966). This was because the employer was required to accept an employee as he was, the benefits of the Workmen's Compensation Act not being restricted to those who were free from previous impairment. Thus, in Combination Rubber Mfg. Co. v. Obser, 95 N.J.L. 43 (Sup. Ct. 1920), a typical case, an employee who had previously lost an eye and later became *414 involved in a work-connected accident causing the loss of the other eye was held entitled to compensation benefits from his employer for total and permanent disability.
It goes without saying that a result such as that in the foregoing case tended to discourage the hiring of employable workers suffering from some form of partial disability. It was in furtherance of the policy of the State to promote the employment of such workers that New Jersey, in line with a majority of the states, set up the One Per Cent Fund. See, as to the history and object of the Fund, Justice Burling's dissenting opinion in Ratsch v. Holderman, 31 N.J. 458, 468-471 (1960).
The original One Per Cent Fund statute, L. 1923, c. 81, was entitled, in pertinent part, "An Act to provide for the collection, * * *, of funds from which to complete compensation payments to persons totally disabled as the result of two separate accidents, * * *" (emphasis added.) The intention behind it was (1) to encourage the hiring of the handicapped, (2) to relieve the employer of the unfair burden of paying for what he did not cause, and (3) to assure full compensation to the injured employee. Richardson v. Essex National Trunk, &c., Co., Inc., 119 N.J.L. 47 (E. & A. 1937); Balash v. Harper, 3 N.J. 437 (1950). As was said in the latter case:
"The intent of the statute is to insure the employee full compensation where a compensable disability succeeds but has no causative connection with the results of a prior disability, the combination of the two leaving the employee permanently and totally disabled. The intention is to relieve the employer of the undue burden of a prior disability, with which or its results, the disability arising in his employ has no causative connection." (at p. 442; emphasis added)
Its effect was to shift from the employer's insurance carrier to the Fund (to which all workmen's compensation carriers and self-insureds contributed) the burden of paying for that portion of the employee's total disability which represented the prior accident or condition. The payments to *415 be made thereunder were denominated "compensation payments" and were required to be made "in accordance with the provisions of paragraph (b) of section 34:15-12 of this Title" (N.J.S.A. 34:15-12). This was the "schedule of payments" for permanent total disability, prescribed by the Compensation Act. As in the case of other workmen's compensation benefits, applications for benefits from the Fund were required to be made by verified petition within two years of the last payment of compensation by the employer or his carrier, N.J.S.A. 34:15-95.1; the matter was to be heard by a deputy commissioner of workmen's compensation (now a judge of compensation) prior to action by the Commissioner of Labor on the former's advisory opinion, and the appeal from the Commissioner of Labor's decision was to the County Court pursuant to N.J.S.A. 34:15-66 (governing workmen's compensation appeals). Payments from the Fund were to be made at the rate fixed in the schedule of compensation payments, and were not to begin until the last payment of compensation by the employer. N.J.S.A. 34:15-95.
From the foregoing we are convinced that, rather than conferring new or separate benefits upon the employee, the One Per Cent Fund Act merely shifted the burden of paying part of the compensation benefits consequent upon the disability suffered by the employee, from the employer's carrier to a fund derived from all carriers. It follows that payments of benefits by the Fund are payments of compensation within the intendment of N.J.S.A. 34:15-40.
The omission to specifically spell out, in N.J.S.A. 34:15-40, the Fund's right to credit or reimbursement does not negate the conclusion we have reached. Cf. Caputo v. Best Foods, Inc., 39 N.J. 371 (1963); New Amsterdam Casualty Co. v. Popovich, supra. When considered against the background of the purposes of the act, we see nothing in reason or logic to support the conclusion that by the creation of the Fund the Legislature intended to lessen the obligation of negligent third parties to make reimbursement *416 to those charged with responsibility for the payment of workmen's compensation. As noted, prior to 1923 the employer was required to shoulder the entire burden of an employee's dsiability, Combination Rubber Mfg. Co. v. Obser, supra, and was entitled to be reimbursed out of any third-party recovery for compensation already paid and to receive credit on account of all compensation thereafter to become due. Following passage of the One Per Cent Fund Act in that year, the Legislature could well have provided (and remains free to do so) that that portion of an employee's total disability for which the Fund was thereafter to be liable was to be excluded from the reimbursement provision of the act. From its omission to do so we are satisfied that continued reimbursement for such of the employee's total disability as was recoverable in the third-party action, was intended. Further, there was no need to expressly provide in the act that the Fund could also institute suit against the third party in case the injured workman failed to do so. Since payments from the Fund did not begin until payments of compensation due from the employer were completed, the authorization to the employer or its carrier to institute suit was sufficient for the protection of all parties entitled to share in any recovery against a third party.
The rule is well settled that one who has paid or become liable to pay compensation to an injured employee is entitled to credit or reimbursement only as to such items as the employee may be entitled to recover against the third party whose negligence occasioned his injuries. O'Brien v. New Jersey State Highway Dept., 11 N.J. Super. 548, 551 (App. Div. 1951). See also Houlihan v. Raymond, 49 N.J. Super. 85 (Law Div. 1958); Schmidt v. Revolvator Co., 46 N.J. Super. 232 (Cty. Ct. 1957); Roberts v. All American Engineering Co., 104 N.J. Super. 1 (App. Div. 1968).
At the oral argument we directed the parties to submit supplemental memoranda as to whether plaintiff would have been entitled to recover in the third-party action for the disabilities for which he had been held entitled to payment of *417 benefits from the Fund. Both have filed supplemental briefs. In the conceded absence of any means of determining the nature and extent of the disabilities for which Bello obtained a settlement of $30,000 from the third-party defendant, we are left to consideration of the measure of damages applicable to such an action.
Disability for workmen's compensation is measured by its effect on the efficiency of the workman's body in the ordinary pursuits of life, Walsh v. Kotler, 46 N.J. Super. 206 (App. Div. 1957); Stepnowski v. Specific Pharmaceuticals, Inc., 18 N.J. Super. 495, 499 (App. Div. 1952). As regards the physiological effect of a tortious injury, it is the general rule in common law actions for negligence that if an accident, when imposed upon a plaintiff suffering from a previous condition or illness or injury, produces a causally resultant condition worse than it would have been had plaintiff been in perfect health before the accident, plaintiff may, nevertheless, recover for his total condition consequent upon the accident. Dalton v. Gesser, 72 N.J. Super. 100, 111 (App. Div. 1962); Green v. Buck Brothers Co., 98 N.J. Super. 187, 192 (App. Div. 1967), affirmed o.b. 51 N.J. 6 (1967). A wrongful act may be the legal cause of plaintiff's resultant disability, even though other causes (such as a preexisting condition) may have joined in producing the final result, provided defendant's negligent conduct was a substantial factor in bringing about the total disability. Dalton v. Gesser, supra, at p 112; Restatement, Torts 2d, § 454, p. 492, comment (b) (1966).
In Dalton plaintiff had allegedly suffered, among other injuries, a cerebral concussion which, superimposed upon a prior brain injury, had resulted in headaches and other symptoms. Here the facts are distinguishable in that Bello suffered from an encephalopathy (a degenerative brain disease) which, so far as the record reveals, was entirely separate and disconnected from his prior respiratory and cardiovascular condition. As to a similar fact pattern, we noted in Dalton:
*418 "* * * differentiation must be made of cases where the question is whether a prior accident or condition has produced a condition or disability separable from that causally resulting from the tortious act involved in the current suit, in which event defendant may properly seek limitation of his liability to that part of plaintiff's disability caused by his own negligence and ask to be relieved of liability for the residual effects of a prior injury or condition. Prosser, Torts (2d ed. 1955), sec. 45, p. 224; 2 Harper & James, Torts, sec. 20.3, pp. 1127, 1128 (1956). It is in regard to a situation of this type that the court said in Paxton v. Misiuk, supra (34 N.J., at p. 460), that:
`A plaintiff may be cross-examined as to prior injuries to show that his present physical condition did not result solely from defendant's negligent act, but was caused, wholly or partially, by an earlier accident or pre-existing condition.'" (at p. 114)
and further:
"* * * Clearly, the principle referred to must not be confused with a defendant's liability for the entirety of an inseparable specific disability, like the plaintiff's headaches in the present case, which, within the proofs and formulation of the issues below, must be deemed to have been due in entirety either to the prior condition alone (in which event plaintiff may not recover), to the current accident alone, or to the concurrent effect of both the prior condition and the current accident (in either of which cases the plaintiff may recover)." (at pp. 114-115)
Here we are satisfied that Bello could not have recovered in the third-party action for his respiratory and cardiovascular condition. The award of benefits from the Fund was predicated upon a finding that prior to the compensable accident which was the basis for the third-party suit petitioner suffered from "a separate and definitive partial permanent disability." Vogel v. Red Star Express Lines, 73 N.J. Super. 534, 540 (App. Div. 1962), affirmed 40 N.J. 44 (1963). This disability, amounting to 25% of total, would have been present regardless of the accident. Absent such a separate, fixed and measurable disability preexisting the compensable accident, there could have been no recovery from the Fund in the first place. Ibid., 73 N.J. Super., at pp. 543-544. Here the allegedly negligent third party could have been held liable for physical disability caused by any *419 condition which proximately resulted from its negligence (including any aggravated effects due to Bello's preexisting condition) together with any increased disability referable to the preexisting condition resulting from the impact of the accident upon it. Here there is no claim made as to the latter and it goes without saying that had there been any "aggravation, activation or acceleration" of Bello's prior condition there could have been no award against the Fund for which reimbursement could have been sought. N.J.S.A. 34:15-95(b).
The Commissioner argues that since Bello's resultant total loss of earning capacity was occasioned, in part at least, by his preexisting condition, this would permit a recovery for such disability. Not so. While recovery for loss of wages, as distinguished from recovery for physiological disability, may encompass plaintiff's unemployability by reason of the combination of his accidental injuries and his prior disabilities, such a recovery would be based, not upon his preexisting disability, but upon the fact that the accident was the proximate cause of the reduction or destruction of plaintiff's ability (as restricted by his prior disability) to earn a living. Thus, to a man with one arm the accidental loss of the remaining arm has more serious economic consequences than would have otherwise been the case, but defendant is not in actuality being called upon to pay for the arm which may have been lost many years before. This no more amounts to a recovery for preexisting physiological disability than would the omission to return a verdict for loss of income in a case involving a plaintiff-executive whose earnings were not affected by his admitted disability, indicate that there was no such disability.
The Commissioner also urges that to deny reimbursement here is to permit a double recovery on Bello's part. What we have already said as to the measure of Bello's damages in the third-party action is equally applicable to this argument. In addition, the benefits payable under the One Per Cent Fund partake of the same nature as those payable in *420 the case of work-connected disabilities, and the same reasons which impelled our courts to deny subrogation to employers in cases involving compensation benefits for work-connected disabilities (see Newark Paving Co. v. Klotz, supra) are applicable to benefits payable through the One Per Cent Fund.
Since damages for the fixed and measurable disability from which Bello had been suffering prior to his work-connected accident were not recoverable in his third-party action, the Fund was not entitled to credit or reimbursement out of the amount received in settlement.
For the foregoing reasons, the judgment of the County Court is affirmed. No costs.