45 N.J. Super. 547 (1957)
133 A.2d 655
ANN L. HAID AND HAROLD J. HAID, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
RICHARD LODERSTEDT, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1957.
Decided July 1, 1957.
*549 Before Judges CLAPP, FRANCIS and STANTON.
Mr. Bernard Shurkin argued the cause for the appellants (Messrs. Sanderson & Cullen, attorneys).
Mr. P. Joseph Marley argued the cause for the respondent (Messrs. Marley & Cerutti, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
In this case the plaintiff, Ann L. Haid, was knocked down by the automobile of the defendant. Claiming that she was crossing the street at an intersection crosswalk and that defendant's car, in making a left turn, caused the accident, she brought this action to recover damages for the injuries suffered. After trial, the jury brought in a verdict for the defendant, which the trial court declined to vacate on motion.
We are asked on this appeal to grant a new trial largely because of the conduct of defense counsel during the presentation of the case. Some of his questions and statements were objected to and the objections were sustained; others were not objected to. But it is contended that the tactics employed were so improper and so pervaded the proceedings to the probable detriment of plaintiffs, that the verdict should not be allowed to stand. Study of the record has convinced us that this is so and we have concluded to grant a new trial.
The principal impropriety complained of is defense counsel's insinuation to the jury in summation that his client was not insured. He said:
"* * * The only person here, I might add, who can possibly get anything out of this case is the plaintiff. The defendant can't get a dime. He loses whether you help him or not. He has already been put to the expense of bringing me in here, coming here himself 
Mr. Sanderson: I object to that.
The Court: There is no question about the expense of a case either by the plaintiff or the defendant.
Mr. Sanderson: No, sir.
Mr. Marley: Very well, then. I will refrain from going into that element." (Emphasis added)
*550 We were told at the oral argument that defendant is insured by the Allstate Insurance Company. And counsel conceded that he had been retained for the defendant by, and either had been or expected to be paid by, the insurance company. So when he told the jury that already the defendant had been subjected to the personal expense of providing counsel, he knew the statement was untrue. Obviously the design is transparent  to suggest to the triers of the fact that the defendant was not insured against an adverse verdict. And the hope and the expectation had to be that the misinformation would stimulate sympathy for the defendant and result in prejudice to the plaintiff. In fact, at the oral argument we asked:
"Weren't you trying to tell the jury that the defendant was not insured?"
And the answer came:
"Not directly."
For a long time our courts have recognized the impropriety and the potential prejudice in negligence cases when the plaintiff inadvertently or intentionally revealed the fact of the defendant's insurance protection. And the action of the trial court or the appellate tribunal thereon has depended in large measure upon the circumstances surrounding the disclosure and the impression of the attendant disadvantage visited upon the defendant.
It seems to us that the prejudice suffered ordinarily by a plaintiff through the improper revelation of absence of insurance coverage by the defendant is likely to be even greater than when the disclosure of such protection of the defendant is injected by the plaintiff. Certainly it cannot be said to be less hurtful. But more than this, the act of conveying the information to the jury by a defendant is more deserving of condemnation when the actor knows that the implied fact is untrue. And so the inclination of a court to find prejudicial error in such a situation is more readily stimulated.
*551 It is true that the plaintiffs did not ask for a mistrial when the objection to counsel's remark was sustained. Nor did the trial judge instruct the jury to disregard the statement. However, we think the transgression of the ordinary rules of fair play was so flagrant that on the basis of plain error another day in court should be given to the probable victims of their adversary's disingenuousness. As the Supreme Court of Wisconsin said in a somewhat similar situation in Georgeson v. Nielsen, 218 Wis. 180, 260 N.W. 461, 463 (1935):
"The situation is one that all too frequently arises. A remark is made by counsel, known to him to be improper, and made with intent and expectation that it will improperly influence the jury to the advantage of his client and the disadvantage of the opposing party. No extraneous evidence is needed to establish such intent. If such result is not intended, why are such remarks made? Objection to the remark by opposing counsel enhances the likelihood that the intended effect will be produced, both by attracting attention to it and by invoking a repetition. The remark being made, or made and repeated, the intended effect is probably produced, and the court's mere formal sustaining of the objection to it and telling the jury to disregard what they have already regarded can avail little towards destroying the effect thus probably produced. Even a reprimand to offending counsel `does not cure the wrong done to litigants' by prejudicial remarks. Corti v. Cooney, 191 Wis. 464, 472, 211 N.W. 274, 277 [1926]. Here there was no reprimand. With more reason may it be said that the homeopathic dose here administered by the trial court did not effect a cure."
It may be noted that in this case the particular defendant involved had no insurance.
Other courts have inveighed against the practice. Piechuck v. Magusiak, 82 N.H. 429, 135 A. 534 (Sup. Ct. 1926); Clayton v. Wells, 324 Mo. 1176, 26 S.W.2d 969 (Sup. Ct. 1930); Scharine v. Huebsch, 203 Wis. 261, 234 N.W. 358 (Sup. Ct. 1931); Brown v. Murphy Transfer & Storage Co., 190 Minn. 81, 251 N.W. 5 (Sup. Ct. 1933); Socony Vacuum Oil Co. v. Marvin, 313 Mich. 528, 21 N.W.2d 841 (Sup. Ct. 1946); Derrick v. Rock, 218 Ark. 339, 236 S.W.2d 726 (Sup. Ct. 1951); King v. Starr, 43 Wash.2d 115, 260 P.2d 351 (Sup. Ct. 1953); see 21 Appleman, Insurance Law and Practice, § 12838 (1947), and cf. Byram v. Snowden, 79 So.2d *552 541 (Miss. Sup. Ct. 1955); Coe v. Van Why, 33 Colo. 315, 80 P. 894 (Sup. Ct. 1905).
Unlike the Wisconsin Supreme Court, we can say with some measure of pride in our bar that the situation complained of here does not happen frequently. In fact, this is the first occasion we have had to review such a record. And our confident expectation is that it will be the last experience of the kind.
Some other examples of defense counsel's attitude must be commented upon. Another incident arose in his summation. He said:
"To go just one step further, there was no traffic ticket apparently or no charge made against anybody here for reckless driving. There was nothing apparently 
Mr. Sanderson: I object to that, your Honor. That has nothing to do with the civil action.
The Court: It has nothing to do with it.
Mr. Marley: Well, we will ignore that fact, your Honor." (Emphasis added)
No evidence was adduced by either party about the police officer having given defendant a traffic ticket or about a charge of reckless driving against him; nor would such proof have been competent, if offered.
The impropriety of the comment to the jury is a matter of elementary knowledge to a trial lawyer even of limited experience. And in the framework of this trial, it has patent symptoms of a consciously unfair tactic.
An incident of like character developed on the cross-examination of the police officer who was called by the plaintiffs. He did not say on direct examination that he saw the accident or that the injured plaintiff was on the crosswalk at the time. In the course of his testimony he said that he must have gotten the names and addresses of the defendant and his wife, "and then I gave it to Officer John. He was the one who made the report on it." On cross-examination, the following took place:
"Q. Am I to understand then that the information on the police report was furnished by you and by Officer John?
*553 Mr. Sanderson: I object to that. He didn't say that.
Q. Let me rephrase it. Officer, do you have a copy of the official police report with you?
A. I do not, sir.
Q. Are you aware that it states on there that the pedestrian was crossing not on a crosswalk?
Mr. Sanderson: I object to that; as to what it states on the police report, the only way is to bring the officer in here. Now, this officer didn't make the police report, he turned it over to another officer."
In spite of the knowledge that this officer did not have the report and of the representation in the question as to what the report contained, the document was never produced nor was the officer who made it called to the witness stand.
Still another matter cannot go unnoticed. Part of the cross-examination on the injury claim was devoted to showing that Mrs. Haid had suffered some previous accidents, although there was no proof that an effort was being made to charge some earlier injury to this accident. After establishing a 1953 injury in a fall, she was asked:
"Q. And you received money as a result of that, did you not?"
Upon objection, counsel asked leave to reframe the question, whereupon he continued:
"Q. You received payments under an accident and health policy every time you had these accidents, did you not?"
The objection was sustained and properly so. Then, in spite of the court's action and without any proof on the subject, in summation this statement was made:
"You will remember that she had an accident and health policy in effect entitled `To payments for disability and weeks of disability' * * *."
Again plaintiff's attorney was put to the necessity of objecting.
The whole record of this trial gives off the impression that the defendant's approach to the desired victory was that the end justified the means. Other instances of departures *554 from fair play could be recited, as for example the argument to the jury that plaintiffs had to show that they were not guilty of contributory negligence. Although the court charged the burden of proof correctly on this defense, there was no specific reference to defense counsel's misstatement. Considered in isolation, these various incidents (except for the insurance denial) probably could not be said to constitute prejudicial error. But cumulatively their probable effect cannot be ignored. When a trial attorney consciously engages repeatedly in questions and practices he knows are in violation of rules of evidence and proper court room decorum, which require constant objections on the part of his adversary, the possible disadvantageous effect of such a stream of objections on the mind of lay jury cannot be disregarded and the harassed party must look to the trial court for assistance in keeping the offender within the limits of proper behavior. Cf. Kulodzej v. Lehigh Valley R. Co., 39 N.J. Super. 268 (App. Div. 1956).
The opinion in Patterson v. Surpless, 107 N.J.L. 305, 308 (E. & A. 1930), bears upon the overall problem under review. In that case the plaintiff endeavored to convey the idea to prospective jurors that the defendant was insured, and a mistrial as well as neutralizing instructions were denied. The Court of Errors and Appeals said:
"Courts exist for the judicial determination of the rights of litigants and for the administration of justice, and it is the duty of those presiding, as far as humanly possible, to see that the setting of each individual case shall be such that an impartial and just deliverance shall be had between the parties, and when counsel deliberately seeks to inject into a cause an element which has, and is designed to have, the effect of prejudicing the rights of one or the other of the litigants, it is the duty of the judge to guard against such effect, either by arresting the trial in limine, as was requested in the present case or by guarding against the pernicious results through proper instruction to the jury as was clearly indicated in [Bashaw v. Eichenberger, 100 N.J.L. 153, 155 (E. & A. 1924)]."
The judgment is reversed with costs and a new trial granted.