54 N.J. Super. 15 (1959)
148 A.2d 217
CHARLES PAXTON, PLAINTIFF-APPELLANT,
v.
GEORGE MISIUK, DEFENDANT, AND HENRY MISIUK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1958.
Decided January 20, 1959.
*17 Before Judges SCHETTINO, HALL and GAULKIN.
Mr. Harry Chashin argued the cause for appellant (Messrs. Marcus and Levy, attorneys; Mr. Chashin, of counsel).
Mr. Andrew V. Clark argued the cause for respondent (Mr. Richard D. Porter, attorney; Mr. Clark, of counsel).
The opinion of the court was delivered by HALL, J.A.D.
Plaintiff appeals from a judgment for respondent entered in the Law Division on a jury verdict of no cause for action. He sued the Misiuks for injuries said to have been sustained when the Misiuk car, owned by George and driven by Henry, in which he was a passenger, ran into a telephone pole. The action against George was voluntarily dismissed after the opening statements and thereafter the case continued against Henry only.
Several grounds for reversal of the judgment are urged, but only one  the claimed improper remarks of defense counsel (not the counsel for respondent on this appeal) during summation  needs to be considered.
After the adverse verdict plaintiff moved for a new trial on various grounds, including one that the verdict resulted *18 from improper and unfair means by reason of the remarks in summation. The trial judge denied the motion and the same question is raised by plaintiff's assertion that the denial was erroneous.
Paxton was a resident of Paterson, 54 years old, married with children, and employed. He patronized a Paterson tavern which belonged to a relative of Henry's, in which the latter, aged 28, was a bartender.
About one o'clock on a Sunday afternoon in May 1956 Henry happened to meet plaintiff in front of the tavern and invited him to go for a ride. Paxton accepted the invitation, and the two of them proceeded to the home of one Kane, a mutual friend, in Stockholm, New Jersey. After a short visit with Kane, they visited taverns in the general area until about 11 P.M., when they returned to Kane's home. There they had something to eat, after which they visited another tavern in McAfee. In this place Henry met two women, whom they drove home. On cross-examination, Paxton testified:
"Q. And while at the Colonial Inn at McAfee you met two young ladies and took them home, did you not?
A. I am not sure I met them. They were there and I believe Henry was asked to take them home. They had no way of getting home.
Q. Then after that you started on this return trip to Paterson? A. Yes, sir."
The accident occurred about 3 A.M., approximately one-half hour after they had "dropped" the women. Henry had been driving toward Hamburg on Route 94, and had stopped for a light, blinking red against him, at the intersection of Route 23 in the center of that town. He then attempted to make a left turn into Route 23 to go toward Paterson. Paxton's version of the accident was that "Henry stopped at the intersection for the light and waited a few seconds and then proceeded out into 23, and instead of making a complete turn into 23 he went across and hit the pole on the far corner, which is swinging wide of the corner." On the other hand, Henry said that he had been forced to *19 run into the pole, to avoid being hit by a speeding car coming from the direction of Paterson on Route 23, which had appeared suddenly over the brow of a hill to his left.
Both men were removed by ambulance to the hospital in Franklin, where they received first aid. The automobile could not be driven. Knowing that Kane would have to drive to Paterson to work that morning, they had the police drive them, at dawn, from the hospital to Kane's home, where they sat in Kane's car until he came out of his house. He drove them to Paterson, and left them at the tavern where the trip had commenced. Paxton sat in the tavern a while, and then Henry took him to the Barnert Hospital in Paterson. After examination there, he went home.
On cross-examination Paxton was asked the following questions, which are, as an example, significant in considering the propriety of the remarks of defendant's counsel in his summation:
"Q. Mr. Kane was a friend of yours, was he not? A. Yes.
Q. Now, when Mr. Kane returned to Paterson you were taken to the saloon on 2 Holsman Street, is that right? A. That is correct.
Q. Did you ask to go there? A. I went there because Henry was going there.
Q. Did you ask to go there? A. I didn't.
Q. You didn't ask him to take you home, did you? A. No, sir.
Q. He would have taken you home had you asked him to? A. No, I don't believe he would because he had to go to work.
Q. I see. But, in any event, you didn't ask him, is that right? A. No, sir.
Q. And you hadn't been home since twelve-thirty the day before? A. That is right.
Q. You hadn't even called your house during the meantime, had you? A. No, sir."
Plaintiff contends that with this and similar testimony as a background, respondent's counsel unfairly and improperly brought into his summation, for the consideration of the jury, unwarranted immaterial and prejudicial aspersions on his morals, by means of adroit references to the two women and to his being away from home for so long on such a trip without telephoning. He urges that defense counsel did *20 it so effectively that the jury returned with its verdict in only 18 minutes, after a three-day trial. He points out that, although the motion for a new trial on this ground was denied, the trial judge did say:
"* * * I would have found otherwise in this case, but that is not the test. * * * Now what led them to find as they did is a matter outside of my control. I think after a protracted trial, they only spent some eighteen minutes in arriving at their verdict * * * [but] the mere fact, as I said before, that I disagree with it isn't enough."
(We are not to be understood as indicating any opinion on these observations by the judge.)
In order to place the summation remarks in proper focus for evaluation, we must advert to other references to the same subject matter earlier in the trial. (Wherever emphasis appears, it is ours.)
During the defense opening to the jury, counsel said:
"* * * and while there at the tavern they had some more beers, met two ladies, left the tavern, took the ladies wherever they were or wherever they wanted to go, or whatever it was and then started back."
Plaintiff's counsel objected, and asked that the reference to the women be stricken because "it is not relevant to any issues in this case and is only intended to prejudice the jury." The trial court responded quite properly: "No. I see nothing improper in it at this time."
A trial judge frequently cannot tell, during an opening, whether statements made by counsel have any proper place in the case or whether facts then recited will be later admissible through witnesses. The court must and should be entitled to rely to a large extent on the proper conduct and good faith of counsel to keep prejudicial matter from the jury. It is the duty of the lawyer not to make any statement in his opening which he knows cannot be admitted in evidence. Shafer v. H.B. Thomas Co., 53 N.J. Super. 19, 26 (App. Div. 1958). Such is the spirit of Canon 22 of the Canons of Professional Ethics. Moreover, "[c]ounsel's *21 opening statement is ordinarily intended to do no more than inform the jury in a general way of the nature of the action and the basic factual hypothesis projected, so that they may better be prepared to understand the evidence. It is normally expected to be summary and succinct." Farkas v. Board of Chosen Freeholders of the County of Middlesex, 49 N.J. Super. 363, 367-368 (App. Div. 1958). In any event, here the episode should have been enough to alert defense counsel of the limited use, i.e., the incidental background of the accident, he was entitled to make thereafter of Paxton's contact with the two women.
The warning was made even plainer during Henry's direct examination. Under questioning by his own counsel, he testified as follows:
"Q. Now, while at the Colonial Inn at McAfee, did you meet two young ladies? A. Well, they weren't too young. They were two ladies.
Mr. Chashin: If the Court please, it is rather interesting, but may I suggest 
The Court: Yes, it is all quite immaterial, especially the age of the ladies.
Mr. Chashin: Or their existence even, your Honor, in this case.
The Court: I agree with you. Well, let us have the narrative and get it over with.
Mr. Doan: All right.
By Mr. Doan:
Q. And did you and Mr. Paxton thereafter take the Indies home? A. Yes.
Q. And after you took them home, what was your destination? A. Paterson, New Jersey."
In his summation, respondent's trial counsel first discussed the evidence as to the injuries. Then, after saying, "I have a very few minutes left * * * to talk about * * * liability which is the big issue," counsel reviewed the visits to the taverns. It is to be noted that neither side contended Henry's ability to drive had been impaired by whatever he had had to drink. The visits to the taverns were, as the trial judge said, merely part of "the narrative." The only possible bearing of the matter of the drinking on the issues of the case would be in reference to the mental *22 alertness of the parties at the time of the accident to observe, minutely and very quickly, just how it occurred.
Counsel followed his enumeration of the taverns with:
"* * * while they were there they met these ladies and took them home and then started home.
As far as his morals are concerned, this is a married man who is out on this day  I am not going to go into that; I am going to leave that to you."
For brevity we shall hereafter refer to this passage as the "first remark."
This remark was obviously and highly improper. The private life of a litigant in a negligence action such as the one at bar is wholly immaterial. An attack by counsel upon a litigant's character or morals, when they are not an issue, is a particularly reprehensible type of impropriety. State v. D'Ippolito, 19 N.J. 540, 547 (1955); 88 C.J.S. Trial § 158, p. 305; 53 Am. Jur., Trial, sec. 480, p. 387. Cf. Kulodzej v. Lehigh Valley R.R. Co., 39 N.J. Super. 268, 273-274 (App. Div. 1956); Leffler v. Aetna Life Ins. Co., 119 N.J.L. 370 (E. & A. 1938); Purpura v. Public Service Electric & Gas Co., 53 N.J. Super. 475 (App. Div. 1959).
Plaintiff's counsel immediately protested, and the following ensued:
"Mr. Chashin: If the Court please  I am sorry, Mr. Doan  I most respectfully object to that, your Honor, and ask that it be stricken on the ground that 
The Court: Yes, certainly. There is no evidence, I think, to justify anything of that sort, Mr. Doan.
Mr. Chashin: And I ask that the jury should disregard it, please, your Honor. May I ask your Honor to so tell the jury?
Mr. Doan: I withdraw the remark.
In any event they left there and came on back. Now, mind you, the evidence is that he never made a phone call to his home from the time he left one o'clock on Sunday up until the time that he went to the Barnert Hospital the evidence indicates that he hadn't even called.
Mr. Chashin: If the Court please, I respectfully object again and, although I concede that it is the evidence, I don't think it is pertinent to any issue, and the jury should be instructed to disregard it.
The Court: No. I will permit the comment.
*23 Mr. Doan: Now, when you are going to weigh the believeability of a witness or a party, you have a right to consider, and his Honor will charge you, and it is your duty to measure the witness as you find him in the witness-box and what he says. Is it credible and is it believable, everything about it? You have a right to consider. Is it square; is it on the level; is it the kind of thing you would like to believe?"
We shall call this the "second" remark.
We must add them together, and give weight to the background evidence which had been adduced. Haid v. Loderstedt, 45 N.J. Super. 547, 552, 554 (App. Div. 1957); Purpura v. Public Service Electric & Gas Co., supra. So evaluated, the remarks made here were a plain invitation to each juror to judge Paxton's claim not upon the standards that apply to a negligence case, but upon whether he lived up to the personal standards of the juror for the behavior of a moral married man.
We have no doubt that these remarks were prejudicial. "No extraneous evidence is needed to establish such intent. If such result is not intended, why are such remarks made?" Haid v. Loderstedt, supra, 45 N.J. Super. at page 551, quoting from Georgeson v. Nielsen, 218 Wis. 180, 260 N.W. 461, 463 (Sup. Ct. 1935); Purpura v. Public Service Electric & Gas Co., supra.
However, respondent argues that any prejudice of the first remark, about leaving Paxton's morals to the jury, was eradicated by the judge's statement, in which he agreed that the remarks should be stricken and added, "There is no evidence, I think, to justify anything of that sort," and counsel's then saying "I withdraw the remark."
We do not think that was sufficient to undo the harm. We pass the question whether anything short of a mistrial could have rectified it, because no such request was made by Paxton's counsel. However, he did ask the court to tell the jury to disregard the first remark, and the court should have done so in direct, strong terms, explaining forcefully to the jury that counsel's remarks were improper, and why. As was said in the annotation in L.R.A. 1918 D, at page 26:
*24 "The court is bound to make his corrective instructions to the jury so clear, explicit, and emphatic as to efface, if possible, any prejudicial or injurious influence likely to have resulted from the misconduct of counsel. The fact that proper objection was made in the presence and hearing of the jury to the obnoxious remarks of counsel, does not excuse the court from performing this duty. Neither is he excused from its performance by the offender's withdrawal of such remarks."
See also Annotation, 86 A.L.R. 899, 902. The withdrawal of a relatively unimportant remark by counsel may make it unnecessary for the judge to say anything further to the jury, but that was not the situation here.
Even if we assume that what was said by counsel and the court did, to some extent, reduce the prejudice of the first remark, that was removed and more prejudice added when defense counsel made the second remark. This time the court rejected the protest of plaintiff's counsel and said, "I will permit the remark," thus leaving the jury with the impression that he approved it. Purpura v. Public Service Electric & Gas Co., supra.
There was no more justification for the second remark than for the first. It is suggested that it was proper comment to show that Paxton was not injured as seriously as he claimed, else he would have called his home after the accident. But the comment was made during the discussion of liability, not damages. That subject had already been covered. More important, the jury was invited to consider that Paxton had not called from the time he left Paterson about 14 hours before the accident. Furthermore the second remark followed immediately after the first, and counsel concluded the thought by telling the jury that "it is your duty to measure the witness as you find him in the witnessbox." As was said in Haid v. Loderstedt, supra, 45 N.J. Super. at page 554, "cumulatively their probable effect cannot be ignored."
The judgment is reversed and a new trial ordered. Costs on appeal to the plaintiff.