295 N.J. Super. 186 (1996)
684 A.2d 981
MARGARET HOFSTROM AND RONALD HOFSTROM, PLAINTIFFS-APPELLANTS,
v.
JEROLD M. SHARE, M.D., EMERGENCY ROOM PHYSICIANS ASSOCIATION AND WEST JERSEY HEALTH SYSTEMS  VOORHEES DIVISION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1996.
Decided November 19, 1996.
*187 Before Judges MICHELS, KLEINER and COBURN.
*188 Gary D. Ginsberg argued the cause for appellants (Law Offices of Gary D. Ginsberg, attorneys; Brian P. O'Connor, on the brief).
Robert E. Paarz argued the cause for respondents (Paarz, Master & Koernig, attorneys; Mary Ann C. O'Brien, on the brief).
The opinion of the court was delivered by COBURN, J.S.C. (temporarily assigned).
This is a medical malpractice case. The jury returned a verdict of no cause of action in favor of defendants. Plaintiffs' subsequent motion for a new trial was denied. Plaintiffs appeal. While no judgment appears to have been entered reflecting the verdict, an order was filed indicating a denial of the motion. Since the matter has been fully briefed and argued as if a judgment had been entered, we will for purposes of this appeal treat the order as if it incorporated a judgment. We are satisfied that reversible error occurred in one respect: the trial court, as requested should have charged the jury to ignore defendants' allegation that plaintiff Margaret Hofstrom had been contributorily negligent. Therefore, we reverse and remand for a new trial.
On Monday, March 12, 1990, plaintiff Margaret Hofstrom, age 25, was treated by defendant Jerold M. Share, M.D., in the emergency room at West Jersey Hospital  Voorhees Division. Her chief complaints were abdominal pain, nausea, vomiting, and pain on urination. Her temperature was 99.6, although it had been as high as 101. Her vital signs were normal. Dr. Share's physical examination revealed normal bowel sounds in all four quadrants of the abdomen. He found that she had diffuse tenderness on palpation of the abdomen, but there was no mass present. She neither "guarded" against the palpating nor complained of pain after the palpating had stopped. She had "pronounced left-sided costovertebral angle tenderness" and jumped when that area was pressed. These findings suggested to Dr. Share that the plaintiff was most likely experiencing a disease process in her kidneys which was probably an infection of the upper urinary system. He had a urinalysis performed which indicated that the *189 white blood cell count was "4-6" which meant that every field that was looked at had at least four and as much as six white blood cells. In his view, this test result was abnormal. Based on the test result, and his examination, and the history, he reached a differential diagnosis of urinary tract infection. He discussed the diagnosis with plaintiff and prescribed medication. He advised plaintiff to follow up with her own physician within two days. He further advised her to return to the emergency room if her condition worsened in any respect.
At around 2:00 a.m. on Wednesday, March 14, 1990, Mrs. Hofstrom awoke with chills and a fever. Later that morning, her pain worsened. She was brought to the hospital. She was diagnosed as having appendicitis. During the ensuing surgery, it was determined that plaintiff had diverticulitis, an inflammation of the colon, and a perforated bowel which required a temporary colostomy for about five months. Plaintiff suffered extensive scarring as a result of the surgery and complained at trial of continuing abdominal pain.
Plaintiff's medical expert, Dr. David Befeler, testified that Dr. Share deviated from accepted medical standards. In his opinion, Dr. Share failed to appreciate that the urinalysis results were normal and did not indicate urinary tract infection. Consequently, Dr. Share was further negligent in not ordering a urine culture and a complete blood count and in discharging the patient without having the results of those tests. Dr. Befeler admitted, however, that diverticulitis was a highly unlikely diagnosis considering plaintiff's history and the results of the physical examination. He further conceded that it was reasonable for Dr. Share to consider urinary tract infection, especially since diverticulitis is unusual in young people. He agreed that the plaintiff's condition at the emergency room on Monday did not indicate a need for surgery. Finally, he testified that, in accordance with Dr. Share's discharge instructions, plaintiff should have returned to the emergency room as soon as she experienced a deterioration of her condition Wednesday morning.
*190 In support of Dr. Befeler's testimony, plaintiff presented Dr. John C. Baylis, Chairman of the Pathology Department and Director of the medical laboratory at West Jersey Hospital. He said that the plaintiff's urinalysis test results were essentially normal.
The defense presented the testimony of Dr. Share and Dr. Julius Kaplan, a board certified specialist in emergency medicine.
Dr. Share explained the reasons for his diagnosis of urinary tract infection and why he did not perceive this as a case of diverticulitis. He explained that diverticulitis is "exceedingly rare" in women of 25 years of age and that 90 to 99% of women who are 25 years old and present with urinary complaints have an infection of the urinary tract. He noted that pain on urination is uncommon with diverticulitis and that nausea and vomiting occur in only 20% of diverticulitis cases. Plaintiff's normal and active bowel sounds, the lack of change in bowel habits, and the absence of a previous history of diverticulitis, all indicated to him an absence of that illness. Diverticulitis usually is reflected by pain located in the abdomen's lower left quadrant, whereas plaintiff had diffuse pain. Additionally, plaintiff had pronounced pain in the left side of her back (near her kidneys) which indicated an infection in the upper urinary tract. He thought the urinalysis confirmed his leading diagnosis because each analyzed field had at least four white cells, which he believed was abnormal.
Dr. Share further explained that he did not order a urine culture because it would not have changed his management of the patient since he believed it took 48 to 72 hours to get the results back. He testified that a culture is not normally ordered for a younger patient and that he would have ordered it later if she had returned with no improvement. He further explained that his treatment was not complete and that his instructions to follow up with her primary physician within two days and to return earlier if increased pain or fever occurred were related to his differential diagnosis. In Dr. Share's view, a complete blood count would have been inappropriate because the outcomes would have been *191 either "normal," "slightly elevated," or "very elevated." The first two possibilities, he said, would not have changed his treatment and would not have helped with the diagnosis. A "very elevated" reading would have meant that a severe illness was present which was entirely inconsistent with plaintiff's condition as he observed it.
Dr. Julius Kaplan, defendant's expert witness, stated that diverticulitis is uncommon in people under age 50, rare in those under 40, and extremely rare for people under 30. He stated that the symptoms for diverticulitis consist of localized abdominal pain in the lower left side, fever, and decreased bowel sounds. Urinary tract infection, on the other hand is indicated by pain or urination, pain in the lower abdomen, low grade fever, some nausea and vomiting with no change in bowel habits, precisely the conditions indicated by the plaintiff's history and physical examination.
Dr. Kaplan defined the standard of care of an emergency physician to include taking an appropriate history, performing a physical examination, ordering and interpreting the appropriate tests, and making an appropriate diagnosis. In his view, an emergency room physician would not have considered diverticulitis as a differential diagnosis in the circumstances of this case.
The urinalysis was properly ordered because of the history of painful urination and tenderness. Even though the lab report listed 0-5 as normal for the lab, since there were white cells in every field, that indicated an abnormal condition. He believed the urinalysis gave credence to Dr. Share's diagnostic impression.
Dr. Kaplan further stated that the standard of care did not require a urine culture since it takes at least 48 hours to grow the culture and, thus, could not have influenced the treatment at the time of the initial examination. A blood count would not have affected the doctor's diagnosis and treatment since the count was minimally elevated on March 14 and was probably normal when Dr. Share examined plaintiff.
*192 In short, it was Dr. Kaplan's view that Dr. Share did not deviate from accepted medical standards in his diagnosis and treatment of plaintiff Margaret Hofstrom.

I
Defense counsel introduced as a major theme in this trial the negligence of plaintiff Margaret Hofstrom in failing to adhere to the instructions she received from Dr. Share. He stressed this theme in his opening remarks, he addressed it in his cross-examination of plaintiffs' expert witness, Dr. Befeler, and he thoroughly explored it during his cross-examination and recross-examination of Mrs. Hofstrom. Lest there be any question about the importance of this subject from his point of view, we note that prior to summations he specifically requested the trial court to charge the jury pursuant to his understanding of Ostrowski v. Azzara, 111 N.J. 429, 545 A.2d 148 (1988), on the effects of Mrs. Hofstrom's contributory fault.
The trial court properly rejected defense counsel's request to charge under Ostrowski, a point no longer in issue in this case. However, the trial court went on to reject the following request to charge submitted by plaintiff:
During the course of this case the [defendant] has alleged that the [plaintiff] Maggie Hofstrom was negligent in that she failed to properly follow the discharge instructions issued to her by Dr. Share. However, the [defendant] has presented no evidence concerning whether that conduct by the [plaintiff] caused any damages, nor is there any evidence in this case upon which you could make such an assessment. Therefore, I instruct you that the actions of the [plaintiff] in this case, that is whether or not she properly followed Dr. Share's discharge instructions shall not be considered by you on any issue of liability, proximate cause or damages which you must determine in this case.
The trial court rejected the proposed charge "because in my charge to the jury, I'm not giving them any indication at all that they should consider the negligence of the plaintiff. It's not in this case."
Plaintiffs contend that the aforesaid action of the trial court was reversible error. Defendants argue that the proposed charge was not required for the reason given by the trial court; and that, *193 even if it was, plaintiffs were not prejudiced by its absence since the jury resolved the case by finding Dr. Share was not negligent. Implicitly, defendants concede that error would have been present if the jury had gone on to consider proximate cause or damages since in that context the jurors might have considered Mrs. Hofstrom's fault as relevant. We believe plaintiffs' position is correct.
In Johansen v. Makita U.S.A, Inc., 128 N.J. 86, 607 A.2d 637 (1992), a products liability case, the Court "consider[ed] whether the trial court erred in not informing the jury that comparative negligence was not an issue in the case, and in not explaining the limited relevance of plaintiff's conduct." Id. at 99, 607 A.2d 637. The Court noted the particularly acute danger of the jury giving undue attention to plaintiff's alleged fault since, as here, it had been a primary defense theme throughout the trial, Id. at 102, 607 A.2d 637, and concluded by saying:
We hold that the trial court committed plain error in failing to instruct the jury on the limited purpose for which it could consider evidence of plaintiff's negligent operation of the saw. On this record, the absence of a limiting instruction clearly had the capacity to mislead the jury in its application of the risk-utility factors, particularly in view of the extent to which defendant's proofs emphasized plaintiff's lack of due care. The trial court should have instructed the jury, in accordance with its earlier ruling, that evidence of plaintiff's method of operating the saw was neither a defense to plaintiff's strict-products-liability claim nor relevant to the jury's application of the fifth factor of the risk-utility analysis. Such evidence could have been considered, however, in determining whether the specific manner in which plaintiff had operated the saw had been the sole cause of the accident.
[Id. at 102-03, 607 A.2d 637.]
In the instant case, the trial court had correctly ruled under Ostrowski, supra, that plaintiff Margaret Hofstrom's alleged comparative fault, which was repeatedly stressed by defense counsel, was entirely irrelevant. Consequently, the failure to explain this to the jury was even more egregious than what occurred in Johansen where the evidence had at least some limited relevance.
What occurred here is analogous to the situation where an attorney persists in making unwarranted prejudicial appeals to a jury which taint the verdict. In such circumstances, we have often held that a reversal is in order. See, e.g., Haid v. Loderstedt, 45 *194 N.J. Super. 547, 551, 133 A.2d 655 (App.Div. 1957); Dalton v. Gesser, 72 N.J. Super. 100, 106-07, 178 A.2d 64 (App.Div. 1962); Tomeo v. Northern Valley Swim Club, 201 N.J. Super. 416, 420-421, 493 A.2d 544 (App.Div. 1985); Henker v. Preybylowski, 216 N.J. Super. 513, 520, 524 A.2d 455 (App.Div. 1987).

II
Plaintiffs complain of two evidentiary rulings made by the trial court.
The first ruling relates to the testimony of Dr. Bayles, the director of the Hospital's laboratory. He had been permitted to testify that a 4-6 white blood cell count resulting from an urinalysis test was essentially normal. That testimony buttressed the opinion of Dr. Befeler and contradicted the defense witnesses. However, he was not permitted to indicate what the values would be for an abnormal test result when the patient was suffering from a urinary tract infection. The objections raised by defense counsel were that the lab request-to-test slips do not indicate the suspected diagnosis when the test is requested and that Dr. Bayles was being asked for an opinion when he had not been listed as an expert witness. The trial court said: "Certainly we can ask this witness what's normal and abnormal but when you're trying to tie it in with a urinary tract infection, I guess there is some merit to his [defense counsel's] suggestion."
Since Dr. Bayles was permitted, without objection, to testify as to what a normal white blood count was, we fail to see why he should not have been permitted to testify as to what the laboratory considered an abnormal count, assuming that was not already implicit as a result of his indicating what was considered to be within the range of normal. Certainly, neither defense counsel nor the trial court set forth a legal reason for excluding that testimony. We do not exclude the possibility that such a reason may appear on retrial.
*195 Next plaintiffs contend the court erred in prohibiting cross-examination of Dr. Share by reference to a laboratory report on a urine culture that indicated a return of the results within 24 hours. The report was prepared with respect to Mrs. Hofstrom at some time after she returned to the hospital for her surgery. Plaintiffs wished to introduce the document to counter Dr. Share's testimony that urine cultures ordered from the emergency room took 48 to 72 hours. The trial court sustained defendants' objection which was based on plaintiffs' failure to prove the circumstances under which that culture had been ordered. We perceive no error in that ruling since there may well be differences between the handling of requests for urine cultures with respect to admitted patients and patients treated in the emergency room. In short, plaintiffs failed to lay a proper foundation for the admissibility of the document in question.

III
Plaintiffs contend the trial court erred by including in the instructions to the jury that portion of the Model Jury Charge which discusses the relation of a physician's use of judgment to the question whether there has been a deviation for accepted medical practice. The point is without merit. Schueler v. Strelinger, 43 N.J. 330, 344-45, 204 A.2d 577 (1964); Walck v. Johns-Manville Products Corp., 56 N.J. 533, 562, 267 A.2d 508 (1970); Lanzet v. Greenberg, 243 N.J. Super. 218, 224, 579 A.2d 309 (App.Div. 1990), rev'd on other grounds, 126 N.J. 168, 594 A.2d 1309 (1991).

IV
Last, plaintiffs contend the verdict was against the weight of the evidence, and that, therefore, their motion for a new trial should have been granted. In light of our determination of point I in plaintiffs' favor, discussion of this point is unwarranted.
Reversed and remanded for further proceedings.